IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:14-CR-278 |
|  | ) |  |
| v. | ) | Honorable Gerald Bruce Lee |
|  | ) |  |
| AMIR A. BAJOGHLI, | ) | Motions Hearing: October 10, 2014 |
|  | ) |  |
| Defendant. | ) | Trial: October 22, 2014 |
|  | ) |  |

**GOVERNMENT'S RESPONSE**
**TO DEFENDANT'S MOTION TO STRIKE SURPLUSAGE**

The United States of America, by and through undersigned counsel, hereby responds to

the defendant's motion to strike surplusage. All three statements challenged by the defendant are

relevant to the charged offenses, and the defendant's motion should be denied.

## I.      Introduction

A motion to strike surplusage from an indictment under Federal Rule of Criminal

Procedure 7(d) should be granted only if it is clear that the allegations are (1) not relevant to the

charges; (2) inflammatory; *and* (3) prejudicial. *United States v. Williams*, 445 F.3d 724, 733 (4th

Cir. 2006). Because this is such an exacting test, courts rarely grant such motions. *See, e.g.*,

*United States v. Hedgepeth*, 434 F.3d 609, 611 (3d Cir. 2006) ("Motions to strike surplusage are

rarely granted."); *United States v. Jordan*, 626 F.2d 928, 931 n.1 (D.C. Cir. 1980) ("The standard

under Rule 7(d) has been strictly construed against striking surplusage.").

"[I]nformation that is prejudicial, yet relevant to the indictment, must be included for any

future conviction to stand, and information that is irrelevant need not be struck if there is no

evidence that the defendant was prejudiced by its inclusion. *Hedgepeth*, 434 F.3d at 612 (cited

approvingly in *United States v. Hallman*, 2014 WL 3361292, at *2 (4th Cir. July 10, 2014)).

"Generally, an indictment may include matters that the government intends to prove at trial, even

if they are not essential elements of the crime charged, so long as it is in a general sense relevant

to the overall scheme charged in the indictment." *United States v. Holzwanger*, 2011 WL

1741920, at *7 (D.N.J. May 4, 2011) (citations and internal quotation marks omitted); *see also*

*United States v. Alexander*, 2008 WL 2130185, at *3 (W.D. La. May 18, 2008) ("The mere fact

that information in an indictment does not constitute an element of the charged offense does not

require that it be stricken."). A court should thus not strike allegations in an indictment if they

are sufficiently relevant to the charged offense, regardless of whether they are prejudicial or

inflammatory. *See, e.g., Williams*, 445 F.3d at 733; *Hedgepeth*, 434 F.3d at 612; *United States v.*

*Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990).

II.     **The Allegation Regarding Fellowship Training is Not Surplusage**

The defendant first moves to strike the allegation that he "was not a fellowship-trained

Mohs surgeon." Indictment ¶ 5. This is a health care fraud case where the defendant, as a

doctor, is charged with improperly performing and billing for various medical services, including

a procedure known as Mohs surgery. While the defendant did in fact receive fellowship training,

he did not participate in something known as a "Mohs fellowship." That notwithstanding, he

holds himself out to the public as having been trained with a Mohs fellowship. While the

defendant contends that this allegation is designed to raise questions about the defendant's

qualifications, that is not so. It is instead relevant to the defendant's attempts to garner as much

lucrative Mohs business as possible, including, as is charged in the indictment, by performing the

surgery unnecessarily on healthy patients. Other efforts related to this motive are set forth in the

indictment, which the defendant did not move to strike. *See, e.g.,* Indictment ¶ 28.

Moreover, the defendant's claim that this allegation is not true is beside the point. "[S]ince the truth of the allegations of an indictment is tested at trial and not by pretrial motion or other preliminary proceeding, that an allegation of the indictment may be false does not render it surplusage so as to permit it to be stricken before trial." 9 Fed. Proc., L. Ed. § 22:878 (2014). *See also United States v. Johnson*, 585 F. Supp. 80, 81 (D. Tenn. 1984) (same). Thus, the only question that matters at this point is whether the allegation is in a general sense relevant to the overall scheme as charged in the indictment. Moreover, even if not relevant, this bland statement about the defendant's training and experience is neither inflammatory nor unfairly prejudicial and should not be struck.

### III.     The Allegation Regarding the Labs is Not Surplusage

The defendant next moves to strike the allegations that his Mohs laboratory "in one location doubled as the practice's lunch room," and that he "directed his staff to improperly dispose of medical waste to save money." Indictment ¶ 34. This allegation, however, is relevant to the charged fraudulent scheme.

The performance of Mohs surgery required the defendant to maintain in-house laboratories that met the Clinical Laboratory Improvement Amendments standards set by the Centers for Medicare and Medicaid Services. The scheme alleged in the indictment is that the defendant committed fraud on health care benefit programs by maximizing profits from Mohs surgeries with little or no regard for his patients' health and safety. Evidence of how he maximized these profits and how he disregarded patient safety is thus intrinsic to the fraudulent scheme. The defendant himself seems to concede as much by not moving to strike the beginning of the sentence that contains the challenged phrases: "*The defendant employed unqualified and untrained technicians in these laboratories*, which in one location doubled as the practice's lunch

room, and the defendant directed his staff to improperly dispose of medical waste to save

money."  Indictment ¶ 34 (emphasis added).  If what was going on in these labs is relevant to the

charged fraud, as the defendant apparently concedes by not challenging the allegation regarding

his lab technicians, then the manner in which he instructed those lab technicians to deal with and

dispose of hazardous material during the course of Mohs surgery is likewise relevant.

The defendant's reference to Rule 404(b)'s prohibition on propensity evidence is also

misplaced because the analysis on a motion to strike, as explained above, is distinct from a Rule

404(b) analysis.  In any event, the allegations at issue here would be admissible under Rule

404(b) because they are directly relevant to the defendant's financial motive and intent with

respect to the charged counts and are not unfairly prejudicial.  Surely in terms of inflaming the

jury, the allegation that the defendant improperly disposed of medical waste pales in comparison

to the allegation that he intentionally operated on patient's healthy skin tissue just so he could

bill for the services.

**IV.**  **The Allegation Regarding Amount Billed for the Pathology Counts is Not Surplusage**

Finally, the defendant moves to strike the allegation that he "regularly billed the health

care benefit programs $300 to $450 per [permanent section biopsy] slide."  Indictment ¶ 50.  He

cites no authority for this request, and for good reason:  the presentations of these claims for

payment was inherent to and part of the very executions of the fraud charged in the indictment,

and the fraudulent claims themselves will be essential evidence at trial.  The false claim on a

health care benefit program in a healthcare fraud case has the same centrality and relevance as a

false mortgage application in a bank fraud case, or as a false tax refund claim in a tax fraud case.

In all these instances, the amount sought in the document containing false and fraudulent

information is part and parcel of the fraud, regardless of whether the sought after amount is ultimately obtained by the defendant.

In addition to the false claims for $300 to $450 per biopsy slide being the executions of the fraud themselves, the amount of the false claims is also relevant to the issue of materiality. Materiality, of course, is an element that the government must prove as to all of the pathology counts. *See United States v. Perry*, 757 F.3d 166, 175-76 (4th Cir. 2014); *United States v. Cunningham*, 554 Fed. App'x 126, 127 (4th Cir. 2014). At trial, the government anticipates that representatives of health care benefit programs will testify that the evaluation and adjudication of these claims depended not only on who was rendering the service, but also what out-of-pocket expenses were incurred by the provider submitting the claim in instances where the provider did not personally render the services.

The defendant appears to argue that the amounts of the fraudulent claims are not relevant because they were inflated, aspirational requests that he did not actually expect would be paid in full. In support of this argument, defendant contends that the allegation would "creat[e] the misimpression that he was seeking more money than he actually expected to obtain in connection with these services." Memorandum in Support of Defendant's Motion to Strike Surplusage at 6. The defendant is incorrect that presenting evidence about what he *actually* claimed, or billed, to the health care benefit programs would create a "misimpression." The claims themselves will show that $300 to $450 per biopsy slide is precisely the amount that the defendant asked the health care benefit programs to pay him, based on his false and fraudulent representations. Just as a loan application can be used in a bank fraud case to show the amount sought by the defendant, here the fraudulent claims will be used to show the amount the defendant requested from the health care benefit programs. The defendant's argument that he did not expect his fraud

to be entirely successful (*i.e.*, result in full payment of the fraudulent claims) is likewise not grounds for granting his motion to strike, nor does it constitute a defense to the charged fraud.

For all of these reasons, the indictment's allegation regarding the true amount claimed also fails to satisfy the other two requirements for a motion to strike:  it is not inflammatory, and it is not unfairly prejudicial.  There is no likelihood that the jury will be inflamed or confused by the simple matter of the amount the defendant sought for payment for these services.

\* \* \*

All three allegations that the defendant seeks to strike are relevant to the health care fraud scheme charged in the indictment, and are not unduly inflammatory or prejudicial.  The government thus respectfully requests that the Court deny the defendant's motion to strike.

Respectfully submitted,

Dana J. Boente
United States Attorney

By:          /s/
Paul J. Nathanson
Matthew Burke
Katherine L. Wong
Assistant United States Attorneys
Eastern District of Virginia
Counsel for the United States of America
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Tel.: (703) 299-3700
Fax:  (703) 299-3981
Email:  paul.nathanson@usdoj.gov
Email:  matthew.burke@usdoj.gov
Email:  katherine.l.wong@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of October, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> Peter H. White
> Schulte Roth & Zabel LLP
> 1152 15th Street NW, Suite 850
> Washington, DC 20005
> Tel:  (202) 729-7476
> Fax: (202) 730-4520
> Email:  peter.white@srz.com

>       /s/
> Paul J. Nathanson
> Assistant United States Attorney