IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 1:14-CR-278 |
| | ) | |
| v. | ) | Honorable Gerald Bruce Lee |
| | ) | |
| AMIR A. BAJOGHLI, | ) | Motions Hearing:  October 10, 2014 |
| | ) | |
| Defendant. | ) | Trial:  October 22, 2014 |
| | ) | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS
COUNTS 18 THROUGH 60 OF THE INDICTMENT

The United States of America, by and through undersigned counsel, hereby responds to

the defendant's motion to dismiss counts 18 through 60 of the indictment.  The counts are well

pleaded and provide the defendant sufficient notice of the charges against him, and his motion

should be denied.

## I.     INTRODUCTION

The defendant is a licensed dermatologist and the owner of a medical practice called the

Skin and Laser Surgery Center, which has offices in Stafford, Woodbridge, and Vienna,

Virginia, and in Washington, D.C.  The indictment charges him with 53 counts of health care

fraud, in violation of 18 U.S.C. § 1347, six counts of aggravated identity theft, in violation of 18

U.S.C. § 1028A, and one count of obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2).

The health care fraud counts charge that the defendant knowingly and willfully submitted

materially false and fraudulent claims for payment to health care benefit programs in connection

with services that, contrary to his certifications, either were not medically necessary or were not

in fact performed by him or under his supervision.  The aggravated identity theft counts charge

that the defendant used the means of identifications of his patients without lawful authority, that

is, without a form of authorization recognized by law, during the course of his commission of the

health care fraud offenses.  The obstruction of justice count charges that the defendant attempted

to corruptly obstruct an official proceeding, including the then-pending grand jury investigation

that resulted in the instant charges.

The defendant contends that these charges (with the exception of health care fraud counts

one through seventeen) "are founded on invalid legal theories," are "legally insufficient," and

thus should be dismissed.  Memorandum in Support of Defendant's Motion to Dismiss Counts

18 through 60 of the Indictment ("Defendant's Memorandum") at 1.  We address the particulars

of the defendant's various arguments below, but, as a general matter, the counts of the indictment

are well pleaded under Federal Rule of Criminal Procedure 7(c)(1).  The defendant's challenges

to the charged offenses, moreover, are more akin to sufficiency of the evidence arguments,

which are inappropriate grounds for dismissal under Rule 7(c)(1).

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c)(1) requires only that an indictment contain "a

plain, concise, and definite written statement of the essential facts constituting the offense

charged."  "[A]n indictment is sufficient if it (i) sets forth the essential elements of the offense,

(ii) fairly informs the defendant of the nature of the charges against him so that he may prepare

his defense, and (iii) enables the defendant to plead the defense of double jeopardy in a future

prosecution for the same offense."  *United States v. Cuong Gia Le*, 310 F. Supp. 2d 763, 772

(E.D. Va. 2004) (footnote omitted) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974),

and *United States v. Daniels*, 973 F.2d 272, 274 (4th Cir. 1992)).  "Typically, an indictment

adequately sets forth the elements of the offense if it tracks the language of the relevant criminal

statute provided that that language 'fully, directly, and expressly, without any uncertainty or

ambiguity, sets forth all the elements necessary to constitute the offense intended to be

punished.'"  *Id.* at 773 (quoting *Hamling*, 418 U.S. at 117).  "[T]he indictment must also contain

a brief statement of the facts and circumstances of the alleged offense," but it "need not set forth

with detail the government's evidence; nor need it enumerate 'every possible legal and factual

theory of defendants' guilt.'"  *Id.* (quoting *United States v. American Waste Fibers Co.*, 809 F.2d

1044, 1047 (4th Cir. 1987)); *see also United States v. Brandon*, 150 F. Supp. 2d 883, 884 (E.D.

Va. 2001) ("In general, if an indictment sets forth the essential elements of the offense in

sufficient detail so as fairly to inform the defendant of the nature of the charge, then it is immune

from attack on a motion to dismiss.").

### III.    THE HEALTH CARE FRAUD COUNTS ARE WELL PLEADED

The indictment unambiguously sets forth the essential elements of the health care fraud

offenses by tracking the language of 18 U.S.C. § 1347 and providing a statement of facts

sufficient to put the defendant on notice of the nature of the charges, allow him to prepare a

defense, and enable him to plead double jeopardy in a future proceeding.  Indeed, the indictment

alleges that,

> "[f]rom at least in or about January 2009 through at least in or about August 2012, within
> the Eastern District of Virginia and elsewhere, the defendant . . .  did knowingly and
> willfully execute and attempt to execute a scheme and artifice to defraud and to obtain,
> by means of materially false and fraudulent pretenses, representations, and promises,
> money owned by and under the custody and control of health care benefit programs, in
> connection with the delivery of health care benefits, items, and services."

Indictment ¶ 27.  It further alleges that to execute this scheme, "the defendant did knowingly and

willfully submit and cause to be submitted" certain "materially false and fraudulent claim[s]" to

various health care benefit programs and sets forth a table identifying the charged executions by

patient, date of service, claim date, and victim health benefit program.  Indictment ¶ 52.  The elements of the offense identified by the defendant, therefore, were fully and unambiguously alleged in the indictment as to the challenged health care fraud counts.  *See* Defendant's Memorandum at 7-8.

The indictment likewise alleges facts and circumstances sufficient to inform the defendant of the nature of the charges.  As to counts 18 through 32, the "wound repair" counts, the indictment alleges, in part, that the defendant "caused fraudulent claims to be submitted to health care benefit programs falsely certifying that the wound closures were personally furnished by the defendant or were furnished incident to the defendant's professional service," when they were in fact performed by unlicensed medical assistants and the defendant was seeing patients at other office locations.  Indictment ¶ 35-36.  As to counts 33 through 42, the "NPI" counts, the indictment alleges, in part, that the defendant "caused fraudulent claims under his NPI [provider number] to be submitted to health care benefit programs  . . . when the services were in fact rendered by the defendant's physician's assistant or nurse practitioner and were not incident to his professional services, and the defendant was at the time seeing patients at a different office location or was away from the practice."  Indictment ¶ 42.  And as to counts 43 through 53, the "pathology" counts, the indictment alleges, in part, that the defendant "fraudulently submitted claims to patients' health care benefit programs for preparing the permanent section slides and analyzing those slides, when he actually performed neither service."  Indictment ¶ 50.  There can be no doubt from these allegations, and others in the indictment, what conduct and false and fraudulent representations have been charged as health care fraud in this case.

### A.  The Wound Repair Counts are Well Pleaded

The defendant contends that the wound repair counts (counts 18-32) should be dismissed because they are supposedly based on the "erroneous legal premise" that the defendant's billing of wound repairs performed by his medical assistants was improper.  Defendant's Memorandum at 9.  Specifically, the defendant argues that Medicare permitted physicians to bill for wound closures performed by medical assistants, that any state law limitations on the scope of practice for medical assistants is not relevant to the question of billing fraud, and that the defendant need not have been physically present at the office location in order to bill for the medical assistant's wound closures under his provider number.[1]  *See* Defendant's Memorandum at 9-14.

As an initial matter, none of the issues raised by the defendant with respect to these counts is cognizable in a motion to dismiss pursuant to Rule 7(c)(1) because the defendant's arguments do not go to the sufficiency of the indictment.  As noted above, every essential element of health care fraud was alleged, as were the essential facts behind that fraud as they relate to this category of counts.  The defendant, in effect, contends that the government will not be able to prove at trial that the wound repair claims that the defendant submitted were materially false, which amounts to a sufficiency of the evidence claim.  A Rule 7(c)(1) motion "requests the rather extreme remedy of dismissing the indictment for failure to state a crime," and it is in "a different context than reviewing the sufficiency of the evidence."  *United States v. Lewis*, 387 F. Supp. 2d 573, 577 (E.D. Va. 2005).  "The Court, in passing on the sufficiency of the indictment,

---

[1] The indictment alleges that Tricare was the relevant health care benefit program as to count 24, and BCBS FEP was the relevant program as to count 29.  While the defendant's motion nominally applies to all the wound repair counts, the defendant has not established how the cited Medicare rules and regulations are relevant to these other programs.  Thus, even if the defendant's analysis were correct as to the other wound repair counts (it is not), it provides no justification to dismiss either count 24 or count 29.

need only determine whether valid crimes have been alleged," and "may not look behind the

indictment to determine the adequacy of the evidence supporting otherwise valid charges." *Id.*

In any event, the defendant's factual and legal assertions regarding the permissibility of

medical assistants performing unsupervised invasive procedures, such as complex suturing and

skin grafts, and his ability to lawfully bill for it under his provider number (NPI) while not in the

office, are in error.  The government fully intends to introduce evidence to that effect at trial.

First, Medicare has always required that services be provided by personnel authorized by state

law to perform those services.  The very Federal Register page cited by the defendant, *see*

Defendant's Memorandum at 10-11, makes this clear (albeit in the sentence prior to the one

quoted by the defendant in his filing):

> We have not further clarified who may serve as auxiliary personnel for a particular
> incident to service because the scope of practice of the auxiliary personnel and the
> supervising physician (or other practitioner) *is determined by State law*.  We deliberately
> used the term any individual so that the physician (or other practitioner), under his or her
> discretion and license, may use the service of anyone ranging from another physician to a
> medical assistant.  In addition, it is impossible to exhaustively list all incident to services
> and those specific auxiliary personnel who may perform each service.

CMS, *Medicare Program; Revisions to Payment Policies and Five-Year Review of and*

*Adjustments to the Relative Value Units Under the Physician Fee Schedule for Calendar Year*

*2002*, 66 Fed. Reg. 55246, 55268 (Nov. 1, 2001) (emphasis added).  While the defendant is

correct that the definition of "auxiliary personnel" in 42 C.F.R. § 410.26(a)(1) was amended

effective January 2014 to explicitly reference compliance with state law, this was not evidence of

a change in policy.[2]  Indeed, the commentary cited by the defendant appears to indicate the

---

[2] The Medicare Benefit Policy Manual provides that "[a] nonphysician practitioner such as a physician assistant or a nurse practitioner may be licensed under State law to perform a specific medical procedure," and the procedure may be "covered as incident to the services of a physician" if it is "performed under the direct supervision of the physician as an integral part of the physician's personal in-office service."  Medicare Benefit Policy Manual, Ch. 15, § 60.2, *available at* http://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/

change was intended merely to ease enforcement of this preexisting requirement. CMS, *Medicare Program; Revisions to Payment Policies Under the Physician Fee Schedule, Clinical Laboratory Fee Schedule & Other Revisions to Part B for CY 2014*, 78 Fed. Reg. 74230, 74411 ("Medicare has had limited recourse when services furnished incident to a physician's or practitioner's services are not furnished in compliance with state law.").

Second, irrespective of the state-law issue, the claims were fraudulent because the licensed provider on site at the time of the charged wound closures was not in fact directly supervising the medical assistants. The only licensed provider on site at the time was a nurse practitioner who, by her own admission, was not "involved with the repairs," had "never done a repair," and did not sign off on the charts and superbills for the patients receiving wound repairs. She was thus not "immediately available to furnish assistance and direction throughout the performance of the procedure[s]." 42 C.F.R. § 410.32(b)(3)(ii).

Finally, irrespective of the state law issue and even if the nurse practitioner was properly supervising the medical assistants, the claims were still materially false because they were billed under the defendant's provider number, or NPI. If the nurse practitioner was the only one on premises, Medicare requires the services to be billed under her NPI, which would have resulted in diminished payment on the wound repair claims. *See, e.g.,* CMS, *MLN Matters: "Incident to" Services (No. SE0441) (available at* http://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNMattersArticles/downloads/se0441.pdf) ("'[I]ncident services' supervised by non-physician practitioners are reimbursed at 85 percent of the physician fee schedule."). The defendant does not challenge, nor could he, the materiality of the NPI to the

---

Downloads/bp102c15.pdf). There is simply no support for the contention that a physician may delegate a procedure to a *licensed* physician's assistant or *licensed* nurse practitioner only if consistent with state law, but may delegate *any* procedure to an *unlicensed* medial assistant, whose tasks "ordinarily" include "taking blood pressures and temperatures, giving injections, and changing dressings." *See id.*

proper review and adjudication of a claim.  At trial, representatives of the health care benefit

programs are expected to testify that they rely on the NPI reported on a claim to accurately

reflect who performed or supervised an "incident to" service.  So, at minimum, the wound repair

fraud is equivalent to the NPI fraud charged in counts 33 through 42.

### B.  The NPI Counts are Well Pleaded

The defendant next contends that the NPI counts (count 33-42) should be dismissed

because they amount only to "allegations of administrative error" and fail to establish that the

defendant knowingly filed the false claims.  Defendant's Memorandum at 14-15.  As noted

above, these counts, like all the health care fraud counts, allege the requisite *mens rea*.  Further

allegations in the indictment specific to these counts charge that the defendant was confronted

about the fraudulent billing by his staff.  Indictment ¶ 45.  The government intends to introduce

evidence at trial establishing that the defendant knowingly and intentionally continued the

fraudulent billing thereafter.  Whether or not the conduct was the product of mistake, as the

defendant claims, or intentional conduct, as the government has charged, is a quintessential jury

issue and an improper basis for dismissal pursuant to Rule 7(c)(1).

### C.  The Pathology Counts are Well Pleaded

The defendant argues that the pathology counts (counts 43-53) are not well-pleaded

because the indictment fails to allege that the defendant had a specific intent to defraud.  The

indictment, however, expressly alleges the requisite specific intent for counts 43 through 53.  For

all of these counts, the indictment charges that the defendant "did knowingly and willfully

execute and attempt to execute a scheme and artifice to defraud."  Indictment ¶ 27; *see also*

*id.* ¶ 52.  This language tracks the *mens rea* elements of 18 U.S.C. § 1347, which penalizes

anyone who "knowingly and willfully" executes, or attempts to execute, a scheme or artifice to defraud any health care benefit program.  *See* 18 U.S.C. §1347.

The indictment sets forth the factual allegations underlying these counts with sufficient particularity to put the defendant on notice and allow him to prepare his defense.  *See* Indictment ¶¶ 47-50.   In the section of the indictment titled "Fraudulent Billing for Permanent Section Pathology Slides and Reports," the indictment alleges that the defendant "falsely represented to others that the pathology reports sent to him by the dermatopathologist in Connecticut were his work product and falsely claimed that he had analyzed the underlying permanent section slides in his office."  Indictment ¶ 49.   The indictment goes on to allege that the defendant "fraudulently submitted claims to patients' health care benefit programs for preparing the permanent section slides and analyzing those slides, when he actually performed neither service."  Indictment ¶ 50.

Citing one factual allegation in this section of the indictment, the defendant appears to argue that the true motivation for how the pathology slides and reports were billed was "so that the dermatopathologist could avoid the costs associated with purchasing malpractice insurance to cover the work."  *See* Defendant's Memorandum at 16; Indictment ¶ 48.  This factual allegation, however, does not undermine the allegations in other paragraphs of the indictment that the defendant acted "knowingly and willfully" in submitting materially false and fraudulent claims for the pathology counts.  Indictment ¶¶ 27, 52.  Rather, the defendant's desire to conceal the dermatopathologist's involvement constitutes additional circumstantial evidence of his intent to deceive the health care benefit programs.  In any event, the defendant's argument that he lacked the intent to deceive cannot be squared with the allegations of the indictment, and therefore must be rejected on a motion to dismiss.

The defendant also argues that the indictment fails to allege a material falsehood as to the pathology counts. *See* Defendant's Memorandum at 16-17. The indictment, however, expressly alleges that the defendant "did knowingly and willfully submit and cause to be submitted the identified *materially* false and fraudulent claim[s]" with respect to counts 43 through 53. Indictment ¶ 52 (emphasis added). The factual allegations in the indictment similarly make clear that the defendant "fraudulently submitted claims to patients' health care benefit programs for preparing the permanent section slides and analyzing those slides, when he actually performed neither service." Indictment ¶ 50. The misrepresentations about *who* performed these services are material. At trial, representatives for the relevant health care benefit programs are expected to testify that information about who performed a particular service is material to their review and adjudication of a claim. They are also expected to testify that information about the identity of the provider can affect whether the claim is allowed at all, as well as the rate at which the claim is reimbursed.

The defendant's argument that the pathology claims did not violate any federal or state anti-markup statutes is wholly beside the point. *See* Defendant's Memorandum at 17-18. The only question when evaluating materiality is whether the false statement had a natural tendency to influence or was capable of influencing a decision or action. 1A O'Malley, Grenig and Lee, *Federal Jury Practice &* Instructions, § 16.11 (6th ed. 2014). The indictment meets this requirement by alleging that the falsities in the claims were material. To the extent that the defendant is arguing that the falsities regarding the billed amount ($300-$450) and provider identity were not material, that is a factual dispute that does not go to the sufficiency of the indictment or the sufficiency of the pleadings under Rule 7(c)(1).

## IV.    THE AGGRAVATED IDENTITY THEFT COUNTS ARE WELL PLEADED

Counts 54 through 59 are also well pleaded in that they track the language of 18 U.S.C.

§ 1028A, unambiguously set forth the elements of the offenses, and contain a statement of the

facts and circumstances of the alleged offenses.

Section 1028A provides, in relevant part:

> Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1208A.  A violation of § 1028A requires proof that "the defendant (1) knowingly

transferred, possessed, or used, (2) without lawful authority, (3) a means of identification of

another person, (4) during and in relation to a predicate felony offense." *United States v.*

*Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010).  Health care fraud serves as a predicate offense

for purposes of § 1028A.  *See* 18 U.S.C. § 1028A(c)(5).

The indictment expressly alleges each of these elements, charging that that the defendant

"did knowingly transfer, possess, and use without lawful authority a means of identification of

another person . . . during and in relation to" the health care fraud violations charged in counts 1

through 53 of the indictment.  Indictment ¶ 54.  The indictment specifies the means of

identification used ("the name, date of birth, and insurance identification number of the

individuals identified"), explains how that information was used ("defendant caused the means

of identification to be submitted to health care benefit programs as part of fraudulent claims for

payment"), identifies the initials of the patients whose identifiers were used, and lists the dates

on which the fraudulent claims containing this information were submitted to the health care

benefit programs.  *Id.*

Notwithstanding this explicit language, the defendant contends that "the Indictment does not and cannot allege that Dr. Bajoghli 'knowingly' used these patients' identification 'without lawful authority." Defendant's Memorandum at 21. According to the defendant, he "had 'lawful authority' because 'he obtained the [patients'] consent through their . . . submission of this information to him.'" *Id*. at 21-22 (quoting *United States v. Woods*, 710 F.3d 195, 208 (4th Cir. 2013)). In other words, the defendant claims that because he did not obtain his patients' information through theft, he acted with lawful authority, even though — as must be assumed in evaluating a motion to dismiss — he used his patients' information to perpetrate a fraud.

The Fourth Circuit has squarely rejected the argument that a defendant must steal a person's means of identification to act "without lawful authority." For example, the defendant in *Abdelshafi* operated a company that transported Medicaid patients to and from medical appointments. 592 F.3d at 605. In the course of that business, Abdelshafi lawfully received patients' identifying information so that he could schedule their transportation and later submit bills to an HMO for those services. Abdelshafi used this information in certain instances to submit claims with inflated mileage amounts and for trips that never actually occurred. *Id*. The defendant subsequently was convicted of health care fraud and violating § 1028A.

On appeal, Abdelshafi argued that because the HMO "specifically furnished him with patients' identifying information for use in [his company's] billing, he was in lawful possession of the Medicaid identification numbers and other identifying information," and therefore did not act "without lawful authority." The Fourth Circuit rejected this argument, holding that "[t]he fact that Congress . . . chose the broader phrase 'without lawful authority' in § 1028A(a)(1) plainly indicates that Congress intended to prohibit a wider range of activities in § 1028A(a)(1) than just theft." *Id*. at 608. As the Fourth Circuit explained, "[f]or sure, stealing and then using

another person's identification would fall within the meaning of 'without lawful authority.'

However, there are other ways someone could possess or use another person's identification, yet

not have 'lawful authority' to do so." *Id*. at 607-08 (quoting *United States v. Hurtado*, 508 F.3d

603, 607 (11th Cir. 2007)).  The Fourth Circuit went on to explain that although the defendant

initially and lawfully came into possession of the patients' information, and therefore had

"lawful authority" to use that information "for proper billing purposes," he "did not have 'lawful

authority' . . . to use Medicaid patients' identifying information to submit fraudulent billing

claims." *Id*. at 608.

The Fourth Circuit further clarified § 1028A's use of the phrase "without lawful

authority" in *United States v. Otuya*, 720 F.3d 183 (4th Cir. 2013).  The defendant in *Otuya*

participated in a fraudulent scheme during which he and his co-schemers stole credit card

convenience checks.  The co-schemers then paid local college students in exchange for access to

the students' bank accounts, deposited the credit card convenience checks into those bank

accounts, and withdrew funds credited against the checks before the bank determined that the

checks were not authorized. *Id*. at 185.  Otuya was indicted for conspiracy to commit bank

fraud, bank fraud, and one count of violating § 1028A.  The § 1028A charge was based upon

Otuya's use of the ATM card, PIN number, and social security number of a college student who

knowingly participated in the scheme and who sold this information to Otuya, intending that

Otuya use it to commit a fraud. *Id*. at 185, 189.

On appeal after his conviction, Otuya argued "that § 1028A's use of the phrase 'without

lawful authority' means that in order to violate the statute, a defendant must use another

individual's identification for a particular purpose without the individual's consent." *Id*. at 189.

Otuya therefore claimed that because the college student knew that Otuya would use that

information to perpetrate a fraud and consented to that use, Otuya had not acted without lawful authority. *Id*.

Again, the Fourth Circuit rejected this argument: "Simply put, one does not have 'lawful authority to consent to the commission of an unlawful act. Nor does a 'means of identification' have to be illicitly procured for it to be used 'without lawful authority." *Id*. at 189. "[T]he phrase 'without lawful authority' means that § 1028A prohibits the use of another person's identifying information 'without a form of authorization recognized by law.'" *Id*. at 189 (quoting *Abdelshafi*, 592 F.3d at 609). The Court continued, "it is obvious that, with or without permission from its rightful owner, a defendant who uses the means of identification of another 'during and in relation to any felony violation enumerated' in the statute *necessarily lacks a form of authorization recognized by law*." *Id*. at 189 (emphasis added).

*Abdelshafi* and *Otuya* demonstrate that the indictment here adequately pleads each of the elements of § 1028A, including the requirement that the defendant act "without lawful authority." As explained above, the indictment alleges that the defendant knowingly transferred, possessed, and used his patients' means of identification during and in furtherance of the health care fraud scheme by submitting that information to health care benefit programs as part of fraudulent claims. Indictment ¶ 54. The defendant therefore "necessarily lack[ed] a form of authorization recognized by law" because he used those means of identification to commit an unlawful act.

The defendant attempts to distinguish binding Fourth Circuit law on the supposed ground that in this case, services were actually provided to his patients. Defendant's Memorandum at 23. This argument fails for several reasons. *First*, nothing in the reasoning of *Abdelshafi* or *Otuya* limits those cases' holdings to situations where the fraud involves billing for services not

rendered.  To the contrary, both *Abdelshafi* and *Otuya* hold that it is not possible to have "lawful authority" to use a means of identification to commit any of the crimes enumerated in § 1028A(c).  *See Otuya*, 720 F.3d at 189 ("with or without permission from its rightful owner, a defendant who uses the means of identification of another 'during and in relation to *any* felony violation enumerated' in the statute necessarily lacks a form of authorization recognized by law"); *id*. at 190 ("the plain meaning of § 1028A(a)(1) is unambiguous:  one who uses a means of identification to commit an enumerated felony does not act with 'lawful authority'"); *Abdelshafi*, 592 F.3d at 609 ("The statute prohibits an individual's knowing use of another person's identifying information without a form of authorization recognized by law.  While Abdelshafi had authority to possess the Medicaid identification numbers, he had *no* authority to use them unlawfully so as to perpetrate a fraud.").  *Otuya* and *Abdelshafi* therefore make clear that a defendant acts without lawful authority whenever he uses the means of identification of another person to perpetrate a health care fraud, regardless of exactly how that fraud unfolds.

*Second*, if any distinction could be drawn between this case and *Otuya* and *Abdelshafi*, the circumstances here present a *more* compelling case for the application of § 1028A.  The indictment here alleges that the defendant repeatedly advised his patients that they had cancer when he knew that they did not, and then performed unnecessary and invasive surgery to remove cancer that he knew did not exist.  Indictment ¶ 29.  Likewise, the indictment alleges that the defendant knowingly allowed unlicensed and unqualified medical assistants to perform wound closures on his patients, including on days when he was not present in the office.  *Id.* ¶ 35.  The defendant subsequently submitted fraudulent claims to various health benefit plans for these services.  *Id*. ¶¶ 32, 36.  The indictment's allegations therefore show that, with two exceptions

discussed below, the rightful owners of the means of identification here suffered either actual harm or an unnecessary risk of harm because of the fraud that the defendant perpetrated.

By contrast, there was no allegation of any harm, or even risk of harm, to the patients who did not receive car rides in *Abdelshafi*, nor to the co-scheming college students who knowingly participated and were compensated for their role in the fraud in *Otuya*.  Given that the Fourth Circuit already has blessed the use of § 1028A in those cases, it follows that the § 1028A counts are well-pleaded here.[3]

*Third*, contrary to the claims in the defendant's motion, the indictment alleges that there were instances in which the defendant billed for services that were never provided at all.  *See* Indictment ¶ 32 ("The defendant also caused fraudulent claims to be submitted to health care benefit programs falsely billing for Mohs procedures and falsely stating the diagnosis codes associated with skin cancer, when in fact no Mohs surgery had actually been performed.").  The government intends to present evidence at trial that will show that the defendant did not perform Mohs surgery on H.F. and J.B. (identified in counts 55 and 56) on the dates of service alleged in the indictment, but that he nevertheless knowingly submitted fraudulent claims asserting that these surgeries had been performed.  Thus, even if one were to adopt the defendant's position, disregard the clear language in *Abdulshafi* and *Otuya*, and limit § 1028A claims to frauds involving the failure to render services, there would be no basis to dismiss Counts 55 or 56.

The defendant also attempts to rely on the "rule of lenity" to argue that there is ambiguity in the statute that should be resolved in his favor.  Defendant's Memorandum at 24.  But this argument, too, has been rejected by the Fourth Circuit.  *See Abdelshafi*, 592 F.3d at 610 (quoting

---

[3] These same considerations regarding actual and threatened patient harm coupled with unambiguous Fourth Circuit law supporting the government's position also illustrate why it was appropriate to charge § 1028A here, notwithstanding the defendant's baseless allegation that the counts were added "to coerce a guilty plea."  Defendant's Memorandum at 20.

*United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir. 1988)) (finding that the phrase "without lawful authority" was clear and unambiguous and therefore "there is no need to consult legislative history nor look to the 'rule of lenity.'").[4]

Because counts 54 through 59 are well pleaded and provide adequate notice of the charged offenses, the defendant's motion to dismiss should be denied as to those counts.

## V.   THE OBSTRUCTION OF JUSTICE COUNT IS WELL PLEADED

Count 60 charges the defendant with obstruction of justice, in violation of Title 18, United States Code Section 1512(c)(2).  Section 1512(c)(2) provides that "[w]hoever corruptly – [ ] obstructs, influences, or impedes any official proceeding, or attempts to do so" shall be guilty of an offense against the United States.   The elements of § 1512(c)(2) are that the defendant: (1) obstructed, influenced, or impeded an official proceeding or attempted to do so; (2) did so or attempted to do so corruptly; and (3) either knew about the official proceeding, or that the natural and probable effect of the conduct would interfere with an official proceeding. *United States v. Blair*, 661 F.3d 755, 767 (4th Cir. 2011); 2A O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions* §§ 48.04, 49.06 (6th ed. Feb. 2014).

The text of count 60 tracks the statutory language of 18 U.S.C. § 1512(c)(2) and unambiguously sets forth all of the elements of the offense.  Specifically, the indictment alleges that the defendant:

---

[4] The defendant also relies on the Seventh Circuit's opinion in *United States v. Spears*, 729 F.3d 753 (7th Cir. 2013) (en banc) in support of his claim that the § 1028A counts must be dismissed. The Fourth Circuit, however, has declined to adopt the reasoning or holding of *Spears*, and *Spears* is inconsistent with *Abdelshafi* and *Otuya*, which are binding circuit precedent. *See, e.g., United States v. Adeyale*, 2014 WL 3720007, at *3 (4th Cir. July 29, 2014) (unreported) (observing that the Fourth Circuit's position is in accord with most circuits to have addressed the issue, and contrary to the Seventh Circuit's in *Spears*).

> did corruptly attempt to obstruct, influence, and impede an official proceeding, namely, (1) the investigation by federal law enforcement agencies, including the FBI and the U.S. Department of Health and Human Services Office of Inspector General, (2) the grand jury investigation pending in the Eastern District of Virginia, and (3) criminal prosecution through this indictment and court proceeding, by instructing his receptionist to tell inquiring patients that he had performed their wound closures, regardless of whether that was in fact true, when the defendant knew that the patients' inquiries related to the law enforcement questionnaires.

Indictment ¶ 57.

The indictment also alleges sufficient facts to put the defendant on notice of the nature of this charge, to allow him to prepare a defense, and to enable him to plead double jeopardy in a future proceeding. Specifically, the indictment alleges that the "law enforcement agents sent questionnaires to patients of the defendant" and that these questionnaires asked, among other things, for "information as to who was present during their wound repair procedures." Indictment ¶ 56. The indictment goes on to assert that "many patients contacted the defendant's medical practice to inquire as to who had performed their wound closures" and that the defendant "knew that the patients' inquiries related to the law enforcement questionnaires." Indictment ¶¶ 56, 57.

The defendant argues that the indictment is insufficient because it fails to allege the defendant acted "corruptly." The defendant's argument fails because count 60 expressly alleges that the defendant acted "corruptly . . . by instructing his receptionist to tell inquiring patients that he had performed their wound closures, regardless of whether that was in fact true." Indictment ¶ 57. As the defendant concedes, to act "corruptly" means to "act with the purpose of wrongfully impeding the due administration of justice." *See* Defendant's Memorandum at 24. By using the word "corruptly," count 60 explicitly alleges that the defendant's instruction to his receptionist was with the purpose of wrongfully impeding the due administration of justice.

The defendant also argues that the indictment is insufficient because it does not allege that the defendant's directions to the receptionist resulted in "actually false" information being provided to inquiring patients. *See* Defendant's Memorandum at 24-25.   This argument is not grounds for dismissal of count 60 under Rule 7(c)(1) because it misconstrues the elements of § 1512(c)(2).   Count 60 is based on the defendant's instruction, not on what any particular patients were told.   Accordingly, the truth or falsity of the information actually provided to patients is legally irrelevant; the government is not required to plead or show that justice was actually obstructed. *See United States v. Wilson*, 796 F.2d 55, 57 (4th Cir. 1986) (under the parallel § 1512(b), holding that the "success of an attempt or possibility thereof is irrelevant; the statute makes the endeavor a crime"); *see also United States v. Aguilar*, 515 U.S. 593, 599 (1995) (under § 1503, "the defendant's actions need not be successful; an 'endeavor' suffices"); *United States v. Blair*, 661 F.3d 755, 766 (4th Cir. 2011) (same).   All that § 1512(c)(2) requires is that the defendant "obstruct, influence, impede . . . or *attempt* to do so."   18 U.S.C. § 1512(c)(2) (emphasis added).   The indictment adequately pleads this element of the offense by stating that the defendant's instruction was to tell patients that he performed the wound closures, "regardless of whether that was in fact true."   Indictment ¶ 57.

To the extent that the defendant is arguing that the evidence will show that his instruction was factually accurate and true (*i.e.*, that he personally did perform all wound closures), that contention amounts to a sufficiency of the evidence claim regarding the government's ability to prove that his instruction was, in fact, "corrupt."   Count 60 should not be dismissed on this basis, because a motion pursuant to Rule 7(c)(1) only examines whether an offense has been adequately pleaded, and does not look behind the indictment to evaluate the evidence supporting an otherwise valid charge. *Lewis*, 387 F. Supp. 2d at 577.

Finally, the defendant argues that count 60 should be dismissed because the indictment fails to allege that the defendant acted with intent to obstruct an "official proceeding."  As used here, "official proceeding" means a proceeding before a judge or court of the United States, a United States magistrate judge, a federal grand jury, and a proceeding before a federal government agency which "is authorized by law."  18 U.S.C. § 1515(a)(1).  As the Fourth Circuit explained in *United States v. Clift*, 834 F.2d 414, 415 (4th Cir. 1987), although the term "agency" is not defined in § 1515, "agency" is defined in the general definitional section of 18 U.S.C. § 6.  Section 6 provides that agency "includes any department, independent establishment, commission, administration, authority, board or bureau of the United States . . . ."  18 U.S.C. § 6.  The term "department" means "one of the executive departments enumerated in section 1 of Title 5."  *Id.*  Two of the executive departments listed in 5 U.S.C. § 101 are the Department of Justice and the Department of Health and Human Services.  The indictment therefore alleges that the defendant attempted to obstruct, influence, and impede three independently sufficient official proceedings under § 1512(c)(2):  "(1) the investigation by federal law enforcement agencies, including the FBI and the U.S. Department of Health and Human Services Office of the Inspector General, (2) the grand jury investigation pending in the Eastern District of Virginia, and (3) criminal prosecution through this indictment and court proceeding."  Indictment ¶ 57.

The defendant appears to argue that the indictment is facially insufficient because it fails to expressly allege that he had knowledge of these official proceedings.  The defendant's argument, however, overlooks that this knowledge requirement is inherent in the allegation that he sought to "corruptly" obstruct, influence, and impede these different proceedings.  "Corruptly" is the only scienter requirement in § 1512(c)(2).  In contrast to other obstruction

statutes, § 1512(c)(2) does not include terms like "willfully" or "knowingly."  *Compare* 18
U.S.C. §§ 1505, 1512(b).  It follows that any knowledge requirement in § 1512(c)(2) must derive
from this word, and that "corruptly" must be construed in a manner that avoids criminalizing
innocent conduct.  Here, implicit in the requirement that an individual "corruptly . . . obstructs,
influences, or impedes . . . or attempts to do so" is the requirement that the defendant know about
the official proceeding. 18 U.S.C. § 1512(c)(2). Simply put, a defendant cannot possess the
requisite intent if he is unaware of the very proceeding that his actions are calculated to obstruct,
or was unaware that the natural and probable effect of the conduct would be to interfere with an
official proceeding.  While the defendant appears to implicitly acknowledge that the text of
§ 1512(c)(2) contains this knowledge requirement, he nonetheless argues that the indictment,
which uses that same language, somehow omits that same knowledge requirement.  Because
"corruptly" is the only source of this knowledge requirement in the statute, the indictment
adequately pleads this same knowledge requirement by using the word "corruptly" in the
charging language of count 60.  Moreover, even if the government were required to allege
something beyond the fact that defendant acted "corruptly," the indictment here expressly alleges
that the defendant "knew that the patients' inquiries related to the law enforcement
questionnaires."  Indictment ¶ 57.  The defendant's motion as to count 60 should therefore be
denied.

* * *

All charges in the indictment are well pleaded and provide adequate notice of the charged
offenses.  The government therefore respectfully requests that the defendant's motion to dismiss
be denied.

Respectfully submitted,

Dana J. Boente
United States Attorney

By:        _____/s/_____
           Paul J. Nathanson
           Matthew Burke
           Katherine L. Wong
           Assistant United States Attorneys
           Eastern District of Virginia
           Counsel for the United States of America
           United States Attorney's Office
           2100 Jamieson Avenue
           Alexandria, VA 22314
           Tel.: (703) 299-3700
           Fax:  (703) 299-3981
           Email:  paul.nathanson@usdoj.gov
           Email:  matthew.burke@usdoj.gov
           Email:  katherine.l.wong@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of October, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Peter H. White
Schulte Roth & Zabel LLP
1152 15th Street NW, Suite 850
Washington, DC 20005
Tel:  (202) 729-7476
Fax: (202) 730-4520
Email:  peter.white@srz.com

_____/s/_____
Paul J. Nathanson
Assistant United States Attorney